1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    Edward Lee Jones,                          No.   CV 19-05682-PHX-MTL (JZB)

10                    Plaintiff,

11   v.                                          **ORDER**

12   N. Harris, et al.,

13                    Defendants.

14

15          Plaintiff Edward Lee Jones, who is currently confined in the Arizona State Prison

16   Complex (ASPC)-Eyman, Special Management Unit (SMU) I, brought this pro se civil

17   rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized

18   Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc et seq.  (Doc. 28.)

19          Before the Court is Defendant Harris's Motion for Summary Judgment.  (Doc. 39.)

20   Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v.*

21   *Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 42), and he opposes the

22   Motion.  (Docs. 54, 55, 57.)

23   **I.     Background**

24          As relevant to the pending Motion for Summary Judgment, Plaintiff alleges in his

25   First Amended Complaint that he was transferred to ASPC-Eyman, SMU I on July 5, 2018,

26   but Defendant Harris did not deliver his religious property, including a prayer rug, Qur'an,

27   religious books, kufi (religious hat), and prayer oils, until August 5, 2018.  (Doc. 28 at 4-

28

5.)[1] Plaintiff was transferred to a different unit on December 6, 2018, but he did not receive his property until December 26, 2018. (*Id*. at 5.) Plaintiff was transferred again on November 7, 2019, but he did not receive his property until December 4, 2019, and Defendant Harris had all of Plaintiff's religious property withheld at that time except a Qur'an. (*Id*. at 6-7.)

Plaintiff alleges that under the prior Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) policy—Department Order (DO) 909—a prisoner's property was to be inventoried and returned to the prisoner within 3 to 7 business days. (*Id*. at 7.) The current version of DO 909 does not contain a specific timeframe for the return of a prisoner's property, and Defendant Harris allegedly takes advantage of the "ambiguity" in the policy by holding Plaintiff's and other prisoners' property for 3 to 16 weeks. (*Id*. at 7.) Plaintiff alleges that he was denied the right to practice his religion because he was denied access to his prayer rug, religious books, Qur'an, and prayer oils. (*Id*. at 4.) As relief, Plaintiff seeks monetary damages and injunctive relief to have ADCRR amend DO 909 to reflect that a prisoner's legal and religious property must be inventoried and issued within 72 hours following a request. (*Id*. at 45-46.)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a RLUIPA claim in Count One against Defendant Harris in his official capacity and directed Harris to answer the claim. (Doc. 29 at 3, 12.) The Court dismissed the remaining claims and Defendants, including ADCRR Director David Shinn.[2] (*Id.*)

Defendant moves for summary judgment on the basis that RLUIPA does not authorize claims for monetary damages, Plaintiff's request for the return of his religious property is moot because Plaintiff has a copy of the Qur'an, and, as a property sergeant, Harris is not able to ensure compliance with any injunctive relief ordered. (Doc. 39.)

. . . .

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[2] For the reasons discussed later in this Order, ADCRR Director Shinn will be reinstated as a Defendant in his official capacity.

## II. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

. . . .

. . . .

### B. RLUIPA

RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers " a compelling governmental interest" and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a). Under RLUIPA, a prisoner must show that the relevant exercise of religion is grounded in a sincerely held religious belief and not some other motivation. *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015). Next, the prisoner bears the burden of establishing that a prison policy constitutes a substantial burden on that exercise of religion. *Id.*; *Warsoldier v. Woodford,* 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-2(b)). A "substantial burden" is one that is "oppressive to a significantly great extent." *Warsoldier*, 418 F.3d at 995. (quotations omitted). If the prisoner makes those two showings, the burden shifts to the government to prove that the substantial burden on the prisoner's religious practice both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Id.*

RLUIPA does not permit suits for money damages against prison officials in either their official or individual capacities. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014) (RLUIPA "does not authorize suits against a person in anything other than an official or governmental capacity"). Further, RLUIPA does not allow for damages against officials sued in their official capacities. *Holley v. Cal. Dep't of Corrs.*, 599 F.3d 1108, 1114 (9th Cir. 2010) ("[t]he Eleventh Amendment bars [a prisoner's] suit for official-capacity damages under RLUIPA"). As a result, only an official capacity suit seeking prospective injunctive relief is permitted. *See Wood*, 753 F.3d at 904; *Sprouse v. Ryan*, 346 F. Supp. 3d 1347, 1363 n.9 (D. Ariz. 2017). An official capacity suit represents a way of pleading an action against an entity, and it is treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

. . . .

**III.     Joinder of ADCRR Director Shinn**

"As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001) (internal citations omitted).  The allegations in Plaintiff's First Amended Complaint and the briefing of the pending Motion have caused the Court to review the First Amended Complaint, and, upon review, the Court reconsiders that portion of the Screening Order that dismissed ADCRR Director Shinn.  *See id*; *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (district courts are required to afford a pro se litigant "'the benefit of any doubt' in ascertaining what claims he 'raised in his complaint and argued to the district court'") (quoting *Morrison v. Hall*, 261 F.3d 896, 899 n.2 (9th Cir. 2001)).

As noted, under RLUIPA, a plaintiff may only seek injunctive relief against a defendant in his official capacity, and the real party in interest is not the named defendant, but the entity that employs the defendant.  *Kentucky*, 473 U.S. at 165.  The proper Defendant for a suit against ADCRR is the ADCRR Director in his official capacity, in this case David Shinn.  Plaintiff did not state in what capacity he was suing Shinn, but it is clear from his allegations and the relief he requests that he is suing Shinn in his official capacity.  *See Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010) (complaints filed by pro se prisoner litigants are "held to less stringent standards than formal pleadings drafted by lawyers," and the Court must "construe the pleadings liberally and [] afford the petitioner the benefit of any doubt").  Shinn was the proper Defendant for Plaintiff's request for injunctive relief at the time Plaintiff filed his First Amended Complaint.  Accordingly, pursuant to the Federal Rules of Civil Procedure, the Court will order that ADCRR Director David Shinn be joined as a Defendant in his official capacity for purposes of injunctive relief.  *See* Fed. R. Civ. P. 19(a)(1) (a person must be joined as a party if, in that person's absence, the court cannot accord complete relief among the existing parties); Fed. R. Civ. P. 21 (the court may on its own initiative, at any time, on just terms, add a party).  Shinn bears ultimate responsibility for the policies affecting Arizona prisoners, and without Shinn joined as a

party, the Court cannot accord complete relief. *See id.*; Ariz. Rev. Stat. § 41-1604(A)(1) (listing among the duties and powers of the ADCRR Director that the Director is "responsible for the overall operations and policies of the department").

Because Harris cannot provide the injunctive relief requested, which is the only possible relief under RLUIPA, the Court will dismiss Harris as a Defendant.

## IV.    Relevant Facts[3]

Under Department Order (DO) 909, *Inmate Property*, prisoners "may possess "religious property consistent with the practices of the inmate's chosen religion. Religious property shall be approved and maintained as outlined in [DO] #904, *Inmate Religious Activities/Marriage Requests*." (Doc. 40 (Def.'s Statement of Facts) ¶ 10.) The Pastoral Activities Administrator maintains a list of approved religious items that are authorized by the Chaplaincy and ADCRR security staff. (*Id.* ¶ 12.) To prevent the introduction of contraband into the prison population, prisoners must order property through the inmate store. (*Id.* ¶ 14.) If a religious item is not available in the inmate store, prisoners may request to purchase approved religious items from approved sources, and those requests are processed by the unit chaplains. (*Id.*) DO 904 requires prisoners to submit a request to purchase religious items to the Senior Chaplain using an Inmate Letter that includes

---

[3] Plaintiff filed a prolix response consisting of a 21-page "Memorandum of Law in Support of Plaintiff's Declaration/Statement of Disputed Facts in Opposition to Defendant's Statement of Facts and Motion for Summary Judgment" (Doc. 54), a 36-page Declaration with 300-plus pages of exhibits (Doc. 55), and a 26-page Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment and Statement of Facts (Doc. 57). In addition, Plaintiff's handwriting is difficult to read, many of his exhibits are too faint to read, and many of his facts and disputes are irrelevant. Defendant asks the Court to strike all of Plaintiff's response documents for failing to comply with the rules of procedure, apparently due to their length, but that is not clear. (*See* Doc. 58 at 2.) The Court will deny Defendant's request. Because Plaintiff is proceeding pro se, the Court must avoid applying summary judgment rules strictly. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (courts must "construe liberally motions papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly"); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Moreover, motions to strike are disfavored and are appropriate for pleadings, not for motion briefing. *See* Fed. R. Civ. P. 12(f); *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885-86 (9th Cir. 1983) (finding that the district court erred in granting the defendants' motion to strike the plaintiff's motion to reconsider because "only pleadings are subject to motions to strike"). Nevertheless, the Court will consider Defendant's properly supported facts undisputed unless it is clear from Plaintiff's evidence that there is a genuine dispute.

information about the item(s) the prisoner wants to purchase and where the item(s) can be purchased along with an Inmate Request for Withdrawal to pay for the order. (*Id.* ¶ 13.) The Senior Chaplain must then verify the prisoner's religious preference, determine if the requested items are on the approved items list for that religious preference, and either approve or deny the request. (*Id.*) When a prisoner submits a request for religious property, the hard copy of the request and the accompanying document is sent to ADCRR's Central Office and an electronic copy is also maintained in the prisoner's chaplaincy file at the prison complex. (Doc. 40-3 (Hassler Decl.) at 6 ¶ 16.) Once a request is approved, "a copy is sent to the property office to be added to the prisoner's property file "which moves with the inmate," and a copy is given to the prisoner to show he is authorized to possess the property during a search. (*Id.*)

DO 909 requires that ADCRR staff inventory a prisoner's property each time the prisoner arrives at a reception center, is transferred from one institution to another, is transferred to a higher custody unit or from general population to a segregated population, is assigned to a temporary placement, or upon release, death or escape. (*Id.* ¶ 19.)

Plaintiff is a practitioner of the Islamic faith and a member of the Nation of Islam. (Doc. 55 (Pl. Decl.) ¶¶ 2, 5.) During his 5 daily prayers, Plaintiff uses a prayer rug, a kufi, and prayer oil. (*Id.* ¶ 4.) Also, in furtherance of his religious beliefs, Plaintiff reads religious texts, including the Qur'an. (*Id.* ¶ 5; Doc. 28 at 7.) In 2012, Plaintiff purchased a prayer rug from an approved vendor, and his kufis were provided by a former prisoner who was released from prison. (Doc. 55 ¶ 6.) Documentation for the prayer rug was placed in Plaintiff's property file by property officer Bishop at the Rynning Unit. (*Id.*) Plaintiff appears to say that documentation approving his kufis was also placed in his property file after he spoke to Rynning Unit Deputy Warden Ron Credio, but that is not entirely clear. (*See id.*)

Plaintiff had possession of his prayer rug, kufi, and Qur'an between July 21, 2015 through July 4, 2017, and "at no point [were they] seized and contraband[ed] by Defendant Harris or his subordinates." (*Id.* ¶ 13.) When Plaintiff was reclassified to a close custody

unit on January 16, 2018, his prayer rug, kufi, and 11 books were inventoried and "never seized or contraband[ed]." (*Id.* ¶ 14.) Plaintiff was also allowed to have his prayer rug, kufi, 15 books and Qur'an when he was transferred to the Arizona State Prison (ASP)-Kingman on April 24, 2018. (*Id.* ¶ 15.)

On July 5, 2018, Plaintiff was transferred from ASP-Kingman to ASPC-Eyman, SMU, which is a higher custody level. (Doc. 40 ¶ 29.) In an Inmate Informal Complaint Resolution dated July 24, 2018, Plaintiff stated that he had been at the facility since July 5, 2018 and had been denied a Qur'an, books, and a prayer rug. (*Id.* ¶ 32.) SMU staff inventoried and delivered Plaintiff's property to him on August 5, 2018, at which time Plaintiff received his books, a prayer rug, and two kufi caps. (*Id.* ¶ 33; Doc. 55 ¶ 16.)

On November 30, 2018, Plaintiff was reclassified from close custody to maximum custody, and on December 6, 2018, Plaintiff was transferred from SMU West to SMU East. (Doc. 40 ¶¶ 36-37.) Twenty days later, on December 26, 2018, officers completed an Inmate Property/Contraband/Disposition Tracking Form indicating that a religious property box was given to the SMU Chaplain to determine if Plaintiff was approved to have the property. (*Id.* ¶ 38.) According to Defendant, Plaintiff had not submitted the appropriate documentation to obtain his religious property and was not permitted to possess a kufi or prayer rug; however, these facts are unsupported.[4] (Doc. 40 ¶ 40.) Plaintiff

_____

[4] As support for this statement, Defendant cites to Chaplain Hassler's Declaration in which he states that "Based upon my review of Jones's ASPC-Eyman electronic chaplaincy file, he has not submitted the appropriate documentation to obtain religious property and was not permitted to possess a Kufi or prayer rug." (Doc. 40-3 (Hassler Decl.) at 7 ¶ 25.) Hassler does not say what documentation was missing from Plaintiff's file, and Defendant does not provide a copy of the relevant portions of Plaintiff's electronic chaplaincy file reviewed by Hassler. Consequently, Defendant fails to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by[ ] citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "Materials that are not yet in the record— including materials referred to in an affidavit or declaration —must be placed in the record." Fed. R. Civ. P. 56, advisory comm. note to 2010 amendments. "Following the Federal Rules of Civil Procedure, the Ninth Circuit routinely holds that when a party refers to documentary evidence as the source of a factual allegation in an affidavit or declaration, the party must attach the relevant documents to the affidavit or declaration." *Sapiano v. Millenium Entm't, LLC*, CV 12-8122 PSG (MAN), 2013 WL 12120262, at *4 (C.D. Cal. Nov. 14, 2013) (citing Ninth Circuit cases and district court cases within the Ninth Circuit); *see Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993) (upholding the district court's exclusion of affidavits that failed to attach contract

disputes that he was required to submit any documentation or that he was not permitted to possess these items, asserting that he "already had proper documentation to possess his religious property" because his prayer rug and kufi "had been continually inventoried/re-issued at every complex and unit as shown in the last 6 years." (Doc. 57 ¶ 49.)

Around February 25, 2019, Chaplain Florez issued a copy of the Qur'an to Plaintiff, which Plaintiff was to return upon his transfer or release, but Plaintiff was not permitted to possess a kufi or prayer rug.[5] (Doc. 40 ¶ 41.) Plaintiff disputes that he was not permitted to possess these items, asserting that he had proper documentation for his religious property in his "property file/religious file" and that "the documentation did not vanish until and only after [he] filed suit against the Defendant in November 2019." (Doc. 57 ¶ 40.)

On November 7, 2019, Plaintiff was relocated to ASPC-Eyman, SMU CDU.[6] (*Id.* ¶ 50.) On December 8, 2019, Correctional Officer (CO) II Jordan completed an Inmate Property/Contraband/Disposition Tracking form of Plaintiff's possessions, and the list included a prayer rug and hat that required the chaplain's approval. (*Id.* ¶ 52.) On December 29, 2019, Plaintiff's prayer rug, "religious hat," and other items were seized.[7] (Doc. 40 ¶ 53.)

---

documents that were referred to within the affidavits).

[5] Defendant again relies on the Declaration of Chaplain Hassler as support. (Doc. 40 ¶ 42, citing Hassler Decl. ¶ 26.) Hassler's Declaration cites to a document titled, *Inmate Property Received*, which indicates Plaintiff was loaned a Qur'an on February 25, 2019. (*See* Doc. 40-3 at 107.) The document does not say anything about Plaintiff not having approval to possess a prayer rug or religious cap (*see id.*), and Hassler does not say in his Declaration why Plaintiff did not have approval for a prayer rug or religious cap or cite to any document explaining why he did not have approval. Defendant has therefore failed to support this fact with sufficient evidence.

[6] Plaintiff had three other transfers between May 23 and November 6, 2019, but neither party states that there were any issues with Plaintiff's religious property during those transfers. (*See* Doc. 40 ¶¶ 43-44, 48-49.)

[7] As support, Harris cites to his Declaration in which he states that "According to Jones's confidential ASIS report, on December 29, 2019, CO II Mendoza seized Jones's prayer rug, and 'religious hat' along with other items." (Doc. 40-2 at 10 (Harris Decl.) ¶ 37.) Defendant does not provide this "confidential ASIS report" or even explain what an "ASIS report" is or why it was not provided to the Court. Defendant also does not say why Plaintiff's religious items were seized.

On January 29, 2020, Plaintiff submitted an Inmate Letter to the Chaplain stating that he had possessed a prayer rug and kufi for over 10 years, including in SMU I on 3 different occasions, and this was the first time his religious property had been taken away. (Doc. 40 ¶ 54.) Plaintiff informed the Chaplain that he "was being hindered from performing his 'Salats' (prayers)." (Doc. 57 ¶ 48.) On February 10, 2020, Chaplain Hassler responded that "Chaplaincy does not approve retroactively items that were not obtained through ADC policy. Please provide paperwork showing items were obtained through ADC policy." (Doc. 40-3 at 114.) Plaintiff asserts that if he had "not had proper documentation, his religious property would have been seized 5 years prior, if not longer." (Doc. 57 ¶ 49.)

Defendant claims, without proper support, that Chaplains Florez and Hassler have provided Plaintiff with information and instructions on how to obtain approval to possess religious items, but as of the date of Defendant's Motion for Summary Judgment, Plaintiff had not complied with the process identified in DO 904 to possess a prayer rug or kufi. (*Id.* ¶¶ 56-57.)[8] Defendant also claims, again without proper support, that the information available to Chaplain Hassler indicates that Plaintiff had not purchased these items and, as such, they are considered contraband and Plaintiff is prohibited from possessing them. (*Id.* ¶ 58.)[9] Plaintiff disputes that he had not purchased these items and been approved to have them, asserting that that he did purchase his religious property, he had approval for his religious property dating back to 2015, and that his religious property would have been seized as contraband if he had not purchased the items and had them approved. (Doc. 57 ¶ 52.) Plaintiff also claims that neither Florez nor Hassler have provided Plaintiff "with

---

[8] Defendant cites to Hassler's Declaration as support, but Hassler does not say in his Declaration what information and instructions he and Florez provided to Plaintiff, and Hassler does not identify in what way Plaintiff has failed to comply with DO 904. (*See* Hassler Decl. ¶¶ 30-31.)

[9] As support, Defendant cites to Hassler's Declaration, in which Hassler merely states, "Based upon the documentation and information available to me, Jones has not purchased any of these items. As a result, they are considered contraband and Jones is prohibited from possessing them." (Hassler Decl. ¶ 32.) Hassler does not state what documentation and information he reviewed or provide that documentation.

1    reasonable information regarding [his] religious property," and Florez merely told Plaintiff

2    that his "religious books had been placed in [Plaintiff's] contraband box following

3    disapproval by ADCRR." (Doc. 57 ¶ 50.) Plaintiff states that during a meeting with

4    Hassler and Harris, Hassler told Plaintiff he "would need to purchase a new prayer rug and

5    Kufi," but Harris "never provided any documentation to have [Plaintiff's] current religious

6    property re-approved." (*Id.*) Also, on January 17, 2020, in response to a grievance,

7    Plaintiff "was instructed to re-apply for his religious property," which Plaintiff did, but his

8    application "was ignored." (*Id.* ¶ 51.)

9        Plaintiff currently has a copy of the Qur'an but does not have possession of a prayer

10   rug or kufi. (Doc. 40 ¶ 59.)

11   **V.    Discussion**

12       Defendant argues that Plaintiff's request for monetary damages is not authorized

13   under RLUIPA. (Doc. 39 at 12.) Based on the legal standards already set forth above, the

14   Court agrees that Plaintiff may not obtain monetary damages under RLUIPA. *See*

15   *Sossaman*, 563 U.S. at 288. The Court's analysis therefore focuses on whether Plaintiff is

16   entitled to injunctive relief.

17       Defendant argues that Plaintiff's RLUIPA claim for injunctive relief is moot

18   because Plaintiff "actually possesses at least one of the religious items that are at issue in

19   this litigation," i.e., a copy of the Qur'an. (Doc. 39 at 12-13.) Plaintiff, though, did not

20   request the return of any specific religious items in his First Amended Complaint and does

21   not appear to address Defendant's mootness argument in his response documents. In any

22   case, having only one of his requested religious items would not likely moot Plaintiff's

23   alleged RLUIPA violation where Plaintiff professes that each of the items are necessary to

24   practice his sincerely held religious beliefs, and Defendant completely fails to address

25   Plaintiff's primary injunctive relief request in the form of a change to DO 909 allowing

26   prisoners to have all their legal and religious property inventoried and returned within 72

27   hours of a request. Claims for injunctive relief are moot once a prisoner "is removed from

28   the environment in which he is subjected to the challenged policy or practice." *Jones v.*

1    *Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  There is no evidence before the Court that

2    Plaintiff is no longer subject to DO 909 (or DO 904) such that this claim for injunctive

3    relief is moot.[10]

4              Finally, Defendant argues that Plaintiff cannot show a substantial burden and that

5    ADCRR's property policies further a compelling government interest and are narrowly

6    tailored.  (Doc. 39 at 9-10.)  Defendant therefore appears to concede that Plaintiff has

7    alleged sufficient facts to establish that having access to the items at issue is based on

8    Plaintiff's sincerely held religious belief, and the Court need not discuss this factor.

9              **A.      Substantial Burden**

10             A substantial burden must be "more than an inconvenience"; it prevents a prisoner

11   from "engaging in [religious] conduct or having a religious experience."  *Worldwide*

12   *Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1121 (9th Cir. 2000) (citations

13   omitted).  A substantial burden on religious exercise must "impose a significantly great

14   restriction or onus upon such exercise.'"  *Warsoldier*, 418 F.3d at 995 (quoting *San Jose*

15   *Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)); *Thomas v.*

16   *Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (to substantially

17   burden the practice of an inmate's religion, the interference must "put substantial pressure

18   on an adherent to modify his behavior and to violate his beliefs").

19             Plaintiff argues that Defendant "thwarted his religious exercise by depriving him of

20   his prayer rug, prayer hat 'Kufi' and prayer oils on one or more occasion[s] for a period

21   longer than 72 hours and as long as 30 days," which Plaintiff asserts "is a per se substantial

22   burden" because he is required to pray 5 times daily.  (Doc. 54 at 17.)

23             Defendant argues that requiring Plaintiff to follow prison rules and gain preapproval

24   for religious items does not pose a substantial burden on Plaintiff's ability to engage in

25   religious activity, and Plaintiff simply needs to follow ADCRR requirements to quickly

26

27             [10] The Court need not address Plaintiff's additional request that Harris be removed
     from the property room because this request is neither narrowly drawn nor the least
28   intrusive means necessary to correct the harm, as required for prisoner litigants under the
     PLRA.  18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987,
     999 (9th Cir. 2000).

obtain religious items when he is transferred. (Doc. 39 at 8, 10.) Defendant also contends that Plaintiff has received instructions from Chaplains Florez and Hassler on how to properly obtain religious property, but "Plaintiff has failed to utilize the appropriate process." (*Id*. at 10.)

Defendant's arguments fail because Defendant fails to put forth sufficient facts to show what Plaintiff needs to do to obtain his religious property when he is moved, and to show that, if Plaintiff followed that process, he would receive his religious property within the 72-hour timeframe he requests. In addition, Defendant has failed to present sufficient evidence of what instruction Plaintiff received on how to obtain his religious property, and Defendant did not address Plaintiff's evidence that he did re-apply for his religious property but his application was ignored. Moreover, Defendant never addresses why Plaintiff was allowed to have his religious property (i.e., prayer rug, kufi, and Qur'an) for several years and during several moves without any issue, and Defendant fails to address Plaintiff's evidence that he had authorization in his files for his prayer rug and kufis but that authorization vanished.

Based on this record, there are genuine questions of material fact whether ADCRR's policies for Plaintiff to obtain his religious property substantially burden Plaintiff's religious exercise.

### B.      Compelling Governmental Interest/Least Restrictive Means

Assuming ADCRR's policies do impose a substantial burden on Plaintiff's religious exercise, Defendant must establish that the policies serve a compelling governmental interest and are the least restrictive means of doing so. *Warsoldier*, 418 F.3d at 996-97. Defendant presents uncontroverted evidence that ADCRR has had incidents where religious property has been used to hide contraband or caused a security issue, and that allowing prisoners to receive items from unapproved sources could lead to the introduction of contraband into the prison. (Doc. 40 ¶ 17.) Deterring criminal activity and maintaining prisoner security are legitimate penological interests that justify regulations on prisoner property. *See Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005) ("We do not read RLUIPA to

1  elevate accommodation of religious observances over an institution's need to maintain

2  order and safety."); *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996).

3        Defendant, though, has not presented sufficient evidence or argument explaining

4  the process for Plaintiff to receive his religious property quickly and has thus failed to meet

5  his burden of showing a compelling governmental interest in the complained-of policies or

6  that those policies are the least restrictive means.  The Court will therefore deny summary

7  judgment to Defendant.

8  **VI.    Successive Motion for Summary Judgment**

9        Defendant has not met his burden of showing that he is entitled to summary

10 judgment.  Nonetheless, because Defendant may be able to present evidence regarding the

11 merits of Plaintiff's claims, i.e., the delays in processing religious property under

12 ADCRR's policies, the Court will grant Defendant leave to file a second motion for

13 summary judgment.  *See Hoffman v. Tonnemacher*, 593 F.3d 908, 911-12 (9th Cir. 2010)

14 (district courts have discretion to permit successive motions for summary judgment).

15 **IT IS ORDERED:**

16        (1)    The reference to the Magistrate Judge is **withdrawn** as to Defendant's

17 Motion for Summary Judgment (Doc. 39), and the Motion is **denied**.

18        (2)    The Clerk of Court must update the docket to reflect that, pursuant to Rules

19 19(a)(1) and 21 of the Federal Rules of Civil Procedure, ADCRR Director David Shinn is

20 joined as a Defendant in his official capacity.

21        (3)    The Clerk of Court must prepare a service packet and forward it to the United

22 States Marshal Service for personal service on Defendant Shinn.

23        (4)    The United States Marshal **must immediately personally serve** copies of

24 the Summons, First Amended Complaint, and this Order on Defendant Shinn pursuant to

25 Federal Rules of Civil Procedure 4(e) at 1601 W. Jefferson Ave., Phoenix, Arizona 85007.

26 The United States Marshal must also submit confirmation of service.

27        (5)    Defendant Harris is **dismissed**.

28

1    (6)    Defendant Shinn may file a second summary judgment motion within **30**

2  **days** as set forth in this Order.

3         Dated this 12th day of July, 2021.

4

5                                        *Michael T. Liburdi*

6                                        Michael T. Liburdi
                                         United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28